1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THERON KENNETH HOLSTON,

11              Plaintiff,                    No. CIV S-09-2954 KJM DAD P

12        v.

13   JOSEPH DeBANCA and PHILLIP
     L. SPANDINI, sued in their individual   ORDER
     and official capacities,

14

15              Defendants.

16   _____/

                 This matter comes before the court on the following motions, which the court has

17
     taken under submission on the briefing:[1]  (1) plaintiff pro se prisoner Theron Kenneth Holston's

18
     ("plaintiff") motion to compel further production of documents from defendants Joseph

19
     DaBranca ("DaBranca") (erroneously sued as Joseph DeBanca) and Phillip L. Spadini

20
     ("Spadini") (erroneously sued as Phillip L. Spandini) (collectively, "defendants")  (Doc. No. 48);

21
     (2) defendants' motion to compel plaintiff's further deposition and request for sanctions (Doc.

22
     No. 51) and plaintiff's related motion to strike a portion of defendants' reply (Doc. No. 56);

23
     (3) plaintiff's motion to compel further production of documents and responses to requests for

24
     admissions from defendants (Doc. No. 55) and related motion for leave to submit an addendum

25

26        [1]  See E.D. Cal. L.R. 230(g).

                                             1

1    and declaration of plaintiff regarding the motion (Doc. No. 64); and (4) plaintiff's motion for a

2    pretrial conference via video conferencing (Doc. No. 59).  By this order, the court now rules on

3    the motions, granting defendants' motion in part and denying plaintiff's motions for the reasons

4    set forth below.

5                                              **BACKGROUND**

6                  Plaintiff is proceeding on an amended complaint against defendants DaBranca and

7    Spadini.  Therein, he alleges as follows:  On May 11, 2008, defendants stopped him in front of

8    Walmart in Marysville, California.  They asked him why he threw his bicycle, and he told them

9    that he was upset because the store would not take back the recently-purchased bicycle because

10   there was no mechanic on duty to inspect it.  According to the complaint, defendants noticed

11   alcohol in plaintiff's possession and also smelled alcohol and therefore proceeded to place

12   plaintiff under arrest.  Plaintiff did not resist and cooperated with defendants when they told him

13   they were going to place him in a four-point restraint with handcuffs, leg restraints, and a waist

14   chain.  On the way to the Yuba County Jail, plaintiff acknowledges that he directed aggressive

15   and abusive language towards defendants after they sided with Walmart about the bicycle

16   dispute.  However, plaintiff alleges that at no time did he make any threats or "challenge to

17   violence."  (Am. Compl. at 5a-5c [Doc. No. 12].)

18                 When they arrived at the jail and parked in the garage, both defendants were

19   outside of the vehicle when defendant DaBranca asked plaintiff, "You want to fight?"  Plaintiff

20   remained silent and did not respond.  Then, defendant DaBranca opened the door and stepped

21   back.  Plaintiff stepped out and took one step toward DaBranca.  According to plaintiff,

22   DaBranca appeared angry and took hold of plaintiff's left arm with his left hand and put his right

23   hand on plaintiff's left shoulder.  At the same time, defendant Spadini put his right hand on

24   plaintiff's right arm and his left hand on plaintiff's right shoulder.  Together the defendants

25   allegedly pushed plaintiff toward the vehicle with such force that plaintiff's head made contact

26   with the trunk of the vehicle and caused a deep cut about three inches long across the center of

his forehead.  When plaintiff saw blood and felt the shock of pain, he tried to straighten up.
Defendant DaBranca then held his clothing and waist chain and slung him to the ground.  Both
defendants then got on top of plaintiff, and defendant DaBranca used his knee to rub plaintiff's
face in the cement causing a laceration on the left side of his face and lacerations around his
head.  (Am. Compl. at 5c-5d.)

Based on these allegations, plaintiff claims that defendants used excessive
force against him in violation of the Fourth Amendment.  He also asserts state law claims for
assault and battery as well as negligence.  In terms of relief, plaintiff requests monetary damages
and a declaratory judgment.  (Am. Compl. at 5a.)

**STANDARD**

Pursuant to Federal Rule of Civil Procedure 37, a party may move for an order
compelling disclosure or discovery.  The motion must include a certification that the movant has
in good faith conferred or attempted to confer with the party failing to make the disclosure.  Fed.
R. Civ. P. 37(a)(1).  A motion under Rule 37 is appropriate to compel any disclosure required by
Rule 26(a), to compel a specific discovery response to an interrogatory, request for admission or
request for documents or to compel a response to a deposition question.  Fed. R. Civ. P.
37(a)(3)(A)-(C).

**ANALYSIS**

1.      **Motion for Pretrial Conference Via Video Conferencing**

The court will first address plaintiff's motion for a pretrial conference since it
raises the issue of the overall scheduling of the case.

Plaintiff requests a pretrial conference via video conferencing to seek "guidance"
from the court as to various pretrial matters, including discovery, pretrial motion practice, the
filing of motions in limine and the bifurcation of issues for trial.  (Doc. No. 59 at 3.)   While
plaintiff lists a number of specific issues which he seeks to raise with the court, at bottom, it
appears he is concerned about his ability to complete any necessary discovery and bring a

dispositive motion, considering that the discovery and pre-trial motion deadlines have passed during the time the instant motions have been pending with the court.  Pursuant to the court's March 24, 2011 Discovery and Scheduling Order, discovery in this action closed on July 15, 2011 and all pretrial motions were due on or before October 7, 2011.  (Doc. No. 41.)  The instant discovery motions were timely filed before these deadlines.  No party filed a dispositive motion by the October deadline.

The deadlines have now passed, but good cause appearing, they will be extended in light of this order resolving the pending discovery issues.  The parties may conduct further discovery until *May 25, 2012*; any motions necessary to compel discovery shall be filed by that date.  All pretrial motions, except motions to compel discovery, shall be filed on or before *August 31, 2012.*  The March 24, 2011 Discovery and Scheduling Order is amended in these respects only; its other terms remain in effect.  (Doc. No. 41.)

As indicated in that order, "pretrial conference and trial dates will be set, as appropriate, following adjudication of any dispositive motion, or the expiration of time for filing such a motion."  Some of the issues plaintiff raises are appropriately addressed at the time of the pretrial conference.[2]  As is the court's custom, however, that conference is conducted on the file only, without appearance by either party.  Accordingly, plaintiff's specific request for video conferencing, though unopposed by defendants, is denied.

## 2. Motion to Compel Plaintiff's Further Deposition

### a. Basis for Motion

Plaintiff claims defendants violated his Fourth Amendment rights by using excessive force to restrain him following his arrest for public intoxication.  By this motion, defendants seek to compel plaintiff's response to specific deposition questions; alternatively, as a

/////

---

[2]    Defendants also raise the issue of expert witness disclosures.  That issue will be addressed in the court's further scheduling order, filed after the dispositive motion deadline.

1    sanction, defendants ask the court to deem certain records admissible, thereby obviating the need

2    to conduct plaintiff's further deposition.

3           At his deposition, plaintiff refused to answer questions regarding his prior

4    criminal convictions and contacts with law enforcement.  Defendants move to compel plaintiff's

5    responses on the following grounds:

6           First, they argue that information regarding plaintiff's prior convictions is

7    discoverable for purposes of assessing whether those convictions involved acts of dishonesty,

8    which is relevant to the veracity of plaintiff's testimony.

9           Second, plaintiff testified that he has never been involved in a physical altercation

10   or threatened a peace officer.  (Haynes Decl. [Doc. No. 52], Ex. O at 38-39.)  However, his arrest

11   reports indicate that he has been arrested dozens of times, many of which involved incidents

12   where plaintiff threatened officers and/or physically resisted them.  After this action was filed,

13   defendants requested and received the arrest reports stemming from plaintiff's prior arrests and

14   the corresponding court documents.  Those documents evidence a long history of criminal

15   activity, including incidents where plaintiff was arrested and/or charged with sexual battery,

16   obstructing/resisting an officer, possession of a destructed device, disorderly conduct,

17   assault with a deadly weapon, and battery.  (Id. at Exs. B-G.)  He was also convicted on charges

18   of resisting an executive officer, possession of drug paraphernalia, making/delivering bad checks,

19   impersonation to make another liable, possession of a controlled substance, possession of a

20   firebomb, and robbery.  (Id.)  Many of the arrest reports detail combative and threatening

21   behavior.  During one incident, plaintiff, who was intoxicated, yelled profanities at officers,

22   threatened them, ran at them when they opened his cell door and then later kicked at officers and

23   medical staff.  (Id. at Ex. F.)

24          Finally, defendants argue that information regarding plaintiff's criminal history

25   also goes to damages.  Defendants contend that plaintiff's numerous interactions with law

26   enforcement, including countless arrests and convictions, may lessen any emotional or

                                                   5

psychological upset resulting from the incident at-issue.  They maintain further that the fact that

plaintiff has been incarcerated for much of his adult life may also reduce any claim for lost

wages.  More specifically, plaintiff testified that he is seeking damages for a condition he

allegedly suffered as a result of the incident, which makes him feel like he should "flee or get

away" from officers when they approach.  Plaintiff claims he never felt that way before the

incident.  (Id. at Ex. O at 132-33.)  Defendants emphasize, however, that the arrest records

indicate that plaintiff has a history of running from law enforcement officers.  Defendants argue

they should be permitted to explore those prior contacts to assess whether plaintiff's alleged

condition actually predated his contact with defendants.

Ultimately, plaintiff refused to answer any questions regarding his prior

convictions or interactions with law enforcement, including such basic questions as whether he

has ever been convicted of a felony.  (Id. at 40, 43, 138-41, 143-48.)  Largely, his stated reason

for refusing to answer was that he was "going to assert [a] Rule 30(B)(3)(a), which is a motion to

terminate or limit that question."  (Id. at 40:10-41:3.  See also 42:21-22, 43:7; 129:2-141:18,

143:14-148:25.)  In responding to the motion, plaintiff now maintains that by "asserting the Rule

30 motion," he was invoking the Fifth Amendment privilege against self-incrimination.

### b. Ruling on Motion to Compel

Parties may object to deposition questions, but, in general, that does not absolve

them from providing an answer.  Fed. R. Civ. P. 30(c)(2).  The only time a party may refuse to

answer is when doing so is "necessary to preserve a privilege, to enforce a limitation ordered by

the court, or to present a motion under Rule 30(d)(3)."  Id.  Here, contrary to his protestations

now, plaintiff refused, in large part, to answer questions regarding his prior contacts with law

enforcement, not based on a privilege, but because he intended to file a motion under Rule

30(d)(3).  Indeed, plaintiff testified that he was not refusing to answer "based on a privilege" but

rather that he was "going to make a motion for that protective order [referencing the Rule

30(d)(3) motion]."  (Haynes Decl., Ex. O at 41:1-5.)  A party may only file such a motion when

6

1   the deposition is "conducted in bad faith or in a manner that unreasonably annoys, embarrasses,

2   or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A).

3              Plaintiff's deposition was not conducted in "bad faith" or to unreasonably annoy

4   or embarrass plaintiff. The deposition lasted only a few hours and the questions propounded by

5   defense counsel were limited to discoverable information. For example, plaintiff first refused to

6   answer a question when defense counsel asked whether he had ever been arrested for resisting or

7   obstructing an officer. (Haynes Decl., Ex. O at 40:8-9.) That question came *after* plaintiff

8   testified that he had never threatened or been involved in a physical altercation with law

9   enforcement. (Id. at 39:6-8.) Plaintiff thereafter continued to assert Rule 30(d)(3) as the basis

10  for refusing to answer questions regarding prior contacts with law enforcement. It is clear

11  defendants were in no way acting in bad faith. Rule 30 does not provide plaintiff grounds for

12  relief in this case.

13             Perhaps realizing this fact, plaintiff now, in response to the motion, maintains that

14  he refused to answer *all* of the subject questions based on the Fifth Amendment privilege against

15  self-incrimination. Defendants concede that plaintiff appropriately raised the privilege in one

16  prior respect: In response to a question regarding a May 2010 charge of assaulting an officer,

17  plaintiff stated at the deposition that he "plead the Fifth on that." (Id. at 39:11.) After plaintiff

18  explained that the charges were referred to the District Attorney and were still pending, defense

19  counsel moved on and respected plaintiff's invocation of the privilege. (Id. at 39:14-23.)

20  Defendants contend, however, that in other respects, plaintiff improperly raised the privilege

21  when he refused to answer questions about prior *convictions*.

22             "The *only* way the [Fifth Amendment] privilege can be asserted is on a question-

23  by-question basis." United States v. Bodwell, 66 F.3d 1000, 1001 (9th Cir. 1995) (emphasis

24  added). A blanket assertion of the privilege is insufficient. The privilege is waived if not

25  affirmatively invoked, even if the waiver was not knowing or intelligent. United States v.

26  Stringer, 535 F.3d 929, 938 (9th Cir. 2008). Here, the record is clear that at the time of

7

1  deposition, in large part, plaintiff refused to answer the relevant questions based Rule 30(d)(3),

2  not a claim of privilege–under the Fifth Amendment or otherwise.  Because plaintiff did not

3  invoke the privilege in response to the majority of specific questions, the privilege is waived and

4  cannot be asserted now.  Id.

5        Moreover, as to the questions pertaining to his prior convictions, plaintiff

6  improperly asserted the privilege.  The Fifth Amendment creates a privilege against compelled

7  disclosure that could result in criminal liability.  Hoffman v. United States, 341 U.S. 479, 486-88

8  (1951).  It does not apply to offenses for which an individual has already been convicted or for

9  acts that are not reasonably likely to result in criminal prosecution.  Id.; Mitchell v. United States,

10  526 U.S. 314, 326 (1999).  Plaintiff cannot rely on the privilege to refuse to answer questions

11  about criminal convictions for which there are no pending matters or for criminal acts for which

12  the statute of limitations has long run (as is the case for some of the conduct defendants sought to

13  discuss).  The court will therefore order plaintiff to respond to further deposition questions with

14  these guidelines in mind.

15        Such an order is warranted since the requested information is discoverable.

16  Plaintiff is incorrect that the information about his prior criminal convictions must be "relevant"

17  or "admissible" to be discoverable.  To be discoverable, the requested information need only be

18  "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

19  In this case, information regarding plaintiff's prior criminal convictions and contacts with law

20  enforcement are reasonably calculated to lead to the discovery of admissible information

21  regarding the veracity of plaintiff's testimony, habit and damages.

22        Federal Rule of Evidence 609 provides that certain felony convictions are

23  admissible as well as misdemeanor convictions that involve acts of dishonesty.  Here, defendants

24  properly seek to question plaintiff about his criminal history in order to assess whether any of his

25  prior convictions would be admissible under Rule 609.  See e.g. Englebrik v. Worthington

26  Industries, 670 F. Supp. 2d 1048, 1051 (C.D. Cal. 2009) (granting the defendants' motion to

1    compel the plaintiff's further deposition regarding his misdemeanor larceny conviction because

2    without discovering those facts, the defendants could not assess whether the conviction was

3    admissible under Rule 609).  Similarly, defendants are entitled to explore the circumstances

4    surrounding plaintiff's prior contacts with law enforcement in order to assess whether his

5    assaultive behavior may be admissible as evidence of a habit.  Fed. R. Evid. 404(b); 406.

6    Plaintiff's criminal records indicate that he has repeatedly refused to cooperate with law

7    enforcement and often becomes combative.  Whether that behavior is sufficiently consistent to

8    amount to a habit is unclear at this point because plaintiff refused to respond to defendants'

9    inquiries.[3]

10         While Rule 609 limits a party's ability to introduce prior convictions to attack a

11   party's general character for truthfulness, it does not generally limit a party's ability to impeach a

12   witness for false testimony.  Plaintiff testified he has never been convicted for resisting or

13   obstructing an officer; he also testified he has never threatened a peace office.  Defendants are

14   entitled to explore the accuracy of those statements, especially considering their position that

15   plaintiff's criminal records indicate he has been arrested for and convicted of that very conduct.

16   Fed. R. Evid. 607.

17         Finally, defendants should be permitted to conduct this discovery because

18   plaintiff's prior contacts with law enforcement may bear on his lost wages or emotional distress

19   damages claims.  While plaintiff now maintains that he will "release" defendants from any claim

20   for "permanent or long lasting emotional or psychological upset," he still intends to seek

21   damages for the "temporary and initial" emotional and psychological upset caused by the

22   /////

23

24       [3]  Plaintiff moved to strike defendants' arguments regarding habit evidence on the basis
     that defendants raised the issue for the first time in their reply.  (Doc. No. 56.)  Plaintiff's motion
     is denied.  While defendants did not specifically raise Rules 404(b) and 406 in their moving
25   papers, their arguments generally encompassed the concept of habit evidence and the habit
     evidence argument is closely related to the broad impeachment arguments made by defendants in
26   their moving papers.  Plaintiff adequately responded to these arguments in his opposition.

incident.  Plaintiff's prior contacts which law enforcement are relevant to defendants' assessment of the impact of this incident on plaintiff.

Therefore, for all of the above reasons, the court grants defendants' motion to compel plaintiff's further deposition with respect to his prior criminal convictions and contact with law enforcement.

### c.  Request for Sanctions

Defendants seek an award of sanctions, indicating they have incurred $7,151.42 in attorneys' fees and costs associated with the taking of plaintiff's deposition and the pursuit of this motion.  Rule 37 provides that sanctions are mandatory when the court grants a motion to compel unless (1) the motion was filed before a good faith effort was made to obtain the information through discovery; (2) the opposing party was justified in not responding; or (3) other circumstances exist that make a sanctions award unjust.  Fed. R. Civ. P. 37(a)(5)(A). Defendants recognize that in light of plaintiff's pro se prisoner status, a monetary award is not just and would likely be futile.  Thus, they alternatively ask that the court deem the subject criminal records (Exs. B-K to the Haynes Decl.) admissible for trial, thereby obviating the need to take plaintiff's further deposition.  Defendants, however, provide no support for such an order, nor is the court aware of any authority for such a proposition.  At this juncture, it is premature to assess the admissibility of this evidence.  Indeed, as defendants repeatedly emphasized in moving to compel, the inquiry at this juncture is *discoverable* information.  Defendants must pursue this line of inquiry with plaintiff in order to gather facts necessary to establish that the evidence *is admissible* for trial.

The court concludes that an award of sanctions against the pro se prisoner plaintiff is not justified.  Significantly, plaintiff did not wholly refuse to answer defendants' questions (in large part, he cooperated in the deposition), and he has proffered a thoughtful, albeit legally insufficient, response to the pending motion.  The court considers these facts and finds that an award of sanctions is inappropriate in this case.  Plaintiff, however, is cautioned to heed the

court's rulings and respond to defendants' deposition questions under the parameters set forth herein.

### 3.  Plaintiff's Motion to Compel Defendants' Production of Documents

By his motion, plaintiff seeks to compel further responses to the following document requests:[4]

REQUEST NO. 3:

Information from the personnel files of Yuba County Sheriffs Deputy Joseph Debranca and Sheriffs Deputy Sergeant Phillip Spandini [sic]. items sought to be discovered include, but are not limited to: Any reports, documents or other evidence of complaints of false statements, in reports, false claims of disability, false time cards, any conduct arguably evidencing moral turpitude, or any other evidence of or complaints of dishonesty, by Defendants, including any complaints of unreasonable or excessive use of force.

REQUEST NO. 4 (mistakenly labeled Request No. 1 on Page 4):

Copies of all records, reports or investigative reports filed, pending, completed or otherwise made, and all other writings, pertaining to any of the above mentioned conduct by the named Defendants, including, but not limited to, documentation of citizen complaints of such conduct.

REQUEST NO. 5 (mistakenly labeled Request No. 2 on Page 4):

Names, addresses and phone numbers of all persons who have complained to the Yuba County Sheriffs Department about any of the above-mentioned conduct by the named Defendants.

REQUEST NO. 6 (mistakenly labeled Request No. 3 on Page 4):

Copies or transcripts of any tape recorded statements by any persons, including the named defendants, which were taken in connection with any investigations filed, pending, completed or otherwise made, regarding any complaints of the above-mentioned conduct.

REQUEST NO. 7 (mistakenly labeled Request No. 4 on Page 4):

Names, addresses and phone numbers of persons giving such recorded statements.

/////

/////

---

[4]  These requests were made in a single document titled: "Request for Discovery" which plaintiff served on defendants shortly after the court issued its March 24, 2011 Discovery and Scheduling Order.

REQUEST NO. 8 (mistakenly labeled Request No. 5 on Page 4):

The fact of whether discipline was imposed on the Defendants listed above as a result of any internal investigation, including the incident involving the Plaintiff in the case at bar.

REQUEST NO. 9 (mistakenly labeled Request No. 6 on Page 4):

Any information contained in personnel or internal investigation files that indicates or identifies previous employment or experience by the above listed Defendants in law enforcement related work.

REQUEST NO. 10 (mistakenly labeled Request No. 7 on Page 5):

Any information in connection with any internal affairs investigation into this incident including, but not limited to:
a. Names and addresses of persons contacted and interviewed;
b. Statements of persons contacted and interviewed;
c. Notes of internal affairs investigators;
d. Outcome and conclusion of internal affairs investigations.

REQUEST NO. 11 (mistakenly labeled Request No. 8 on Page 5 ) :
That as to all items requested, the information be furnished regardless of the outcome, disposition, or result of the complaint, report or investigation.

After plaintiff filed the instant motion to compel, defendants served amended responses to these requests.  (Ex. G to Haynes Decl. [Doc. No. 49-1].)  The court has reviewed the amended responses and for the following reasons finds them sufficient:

First, Request No. 3 seeks documents from defendants' "personnel files," including, but not limited to, "reports, documents or other evidence of complaints of false statements in reports, false claims of disability, false time cards, any conduct arguably evidencing moral turpitude, or any other evidence of or complaints of dishonesty, by Defendants, including any complaints of unreasonable or excessive use of force."  (Id. at Ex. C.)  Plaintiff requests that with respect to these documents, as well as all other requests, the "information be furnished regardless of the outcome, disposition, or result of the complaint, report or investigation."  (Id.)  In their amended responses, defendants state that no such documents are in their possession, custody or control because pursuant to the California Public Safety Officers Bill of Rights and California Penal Code § 832.5, the requested items are excluded from personnel files unless the complaints are substantiated.  (Read Decl., ¶ 2 [Doc. No. 49-2].)  Defendants consulted with the

1  Yuba County Sheriff's Department and now attest that there has never been a substantiated

2  complaint against either defendant.  (Id.)  Therefore, defendants properly respond that there are

3  no documents responsive to plaintiff's requests.  (Id.)

4          Requests 4 through 10 seek internal affairs investigation files and related

5  documents.  Notwithstanding the fact that the requests are vague, ambiguous and

6  overbroad as plaintiff fails to identify the categories of documents he is requesting,[5] defendants

7  have responded.  To the extent the requests refer to files pertaining to investigations into the use

8  of excessive force, which is the conduct at-issue, defendants have amended their responses to

9  clarify that no such documents are in their possession, custody or control because they do not

10 have access to any internal investigation or complaint materials unless they become part of their

11 personnel files.  (Read Decl., ¶ 3; Cal. Penal Code § 832.5(c).)  Those documents are in the

12 possession, custody and control of the custodian of records (the Yuba County Sheriff's

13 Department).  Therefore, defendants correctly indicate that they cannot produce documents

14 responsive to plaintiff's requests.  Should plaintiff seek to discover any such documents, he must

15 subpoena the records from the appropriate custodian (apparently, the Yuba County Sheriff's

16 Department).

17         Finally, Requests 5 and 10 seek contact information for individuals who have

18 filed complaints or given statements as part of investigations into unspecified conduct by

19 defendants.  Defendants properly objected to these requests on the ground that they seek

20 information protected by third-party privacy rights.  Even if the information was not protected,

21 defendants attest such information is not in their possession, custody or control, as stated above.

22 (Read Decl., ¶s 2-4.)

23 /////

24

25     [5]  For example, plaintiff's Requests 4 through 6 seek investigation files pertaining to the
   "above-mentioned conduct."  That phrase is not defined in the requests, thereby effectively
26 precluding defendants from reasonably ascertaining what plaintiff is requesting.

1    Defendants have now adequately responded to plaintiff's requests, and thus,

2    plaintiff's instant motion is denied.[6]

3    **4.  Plaintiff's Motion to Compel Defendants' Further Production of Documents and
     Further Responses to Requests for Admission**

4

5    In this motion, plaintiff asks the court to compel defendants' further responses to

6    the following six discovery requests: (1) "Plaintiff's Amended Request for Production of

7    Documents; (2) Plaintiff's Request for Production of Documents to Deputy DaBRANCA, Set

8    Two; (3) Plaintiff's Request for Production of Documents to Sgt. SPADINI, Set Two; (4)

9    Plaintiff's Request for Production of Documents to Deputy DaBRANCA and former Deputy R.

10   Moreno, Set Three; (5) Plaintiff's Request for Admissions, Set One; and (6) Plaintiff's Request

11   for Admissions, Set Two."  (Doc. No. 55 [attaching as Exs. to plaintiff's motion, the subject

12   discovery and defendants' responses thereto].)   The court addresses each of these discovery

13   requests in turn below, finding in all respects that defendants have appropriately responded.

14   **a.  Plaintiff's Amended Request for Production of Documents**

15   The court notes first that plaintiff's request was served on June 9, 2011, well after

16   the May 16, 2011 deadline for written discovery.  On that basis alone, the court could deny

17   plaintiff's motion.  However, considering plaintiff's pro se status and the fact that defendants

18   responded to the discovery, despite its untimeliness, the court has considered the substantive

19   merits of plaintiff's motion.  All five requests sought items pertaining to a camera that, at one

20   time, was capable of recording in the secured garage of the Yuba County Jail where the incident

21   took place.  Plaintiff sought documents evidencing the location of the camera, the name and rank

22   of the person assigned to the camera, the duties of that person, any instructions given that person

23   and any documents prepared by the camera operator that the discuss the altercation between

24   plaintiff and defendants.  (Haynes Decl., Ex. E [Doc. No. 57-1].)

25

26   [6]  The court notes that plaintiff failed in his reply to acknowledge defendants' amended
     responses, and thus, provided no argument to establish any deficiency in the responses.

1    Defendants advised plaintiff on several occasions that the camera was out of

2  commission long before the incident here, and therefore, no one was assigned to the camera and

3  there is no recording.  Accordingly, they appropriately responded to plaintiff's discovery request

4  by indicating that "[n]o such documents are in the possession, custody, or control" of defendants.

5    Defendants' response was sufficient, and thus, plaintiff's motion as to this

6  discovery is denied.

7    **b. Plaintiff's Request for Production of Documents to Defendants, Set Two**

8    Plaintiff served a single document to both defendants entitled "Request for

9  Production of Documents to [Defendants], Set Two."  (Id. at Ex. H.)  At issue on the motion is

10  Request No. 3, seeking any documents and photographs produced by defendant Spadini in his

11  "supervisory capacity" pursuant to the Yuba County Sheriff Department Policy Manual relating

12  to any interviews conducted with plaintiff or any photographs taken of plaintiff's injuries.

13  Defendants responded that no such documents exist.  (Id. a Exs. I & J [Doc. No. 57-2].)

14    Plaintiff disputes defendants' response, arguing that based on the Policy Manual's

15  provisions, Spadini was required to conduct an interview and photograph plaintiff.  Plaintiff

16  misunderstands the policy at issue.  The provision applies "[w]hen a supervisor is able to respond

17  to an incident in which there has been a reported application of force."  (Id. at Ex. K.)  Here, by

18  plaintiff's own account of the events, Spadini was part of the *initial* incident; he did not respond

19  to a report of an application of force; he did not respond to the incident as a supervisor.  The

20  policy provision is inapplicable here.  Plaintiff provides no grounds to challenge defendants'

21  response that no responsive documents exist.  Plaintiff's motion is therefore denied.

22  /////

23  /////

24  /////

25  /////

26  /////

1    **c. Plaintiff's Request for Production of Documents to Defendant DeBranca and**
2       **Deputy R. Moreno, Set Three[7]**

3       At issue on this motion is defendant DeBranca's responses to Request Nos. 2, 3

4    and 5.  Request No. 2 asked defendant to produce portions of the Yuba County Policy Manual

5    relating to video monitoring.  For the same reasons as stated above, defendant appropriately

6    responded that no such documents exist since the camera was not operable at the time.

7    Defendant cannot provide any further response.

8       Request No. 3 requests personnel records of a former deputy R. Moreno.

9    Discovery requests cannot be propounded to a non-party.  Fed. R. Civ. P. 34.  Defendant

10   DaBranca correctly objected to the request and informed plaintiff he could not respond since

11   Moreno was no longer employed by the department and he was not a party to the litigation.

12      Request No. 4 is vague and ambiguous.  Based on plaintiff's motion it appears he

13   seeks to have defendant "authenticate the identity of the authors of the medical documents"

14   attached to his May 18, 2011 deposition as Exs. E through J.  (Doc. No. 55 at 13.)  Defendants

15   have appropriately responded to this request.  They gave plaintiff notice when they subpoenaed

16   the records and thereafter provided plaintiff additional copies of the subpoenas.  (Haynes Decl.,

17   Ex. I.)  Defendants also sent plaintiff copies of the several hundred pages of medical records they

18   obtained pursuant to the subpoenas (at no cost to plaintiff).  The records contain the names of the

19   authors of all the documents.

20      Well after the filing of this motion, plaintiff filed a separate motion requesting

21   leave to submit an addendum and declaration (Doc. No. 64) relating to this issue; by that motion,

22   he sought to "prove" that defendants did not serve plaintiff with the copies of the original

23   subpoenas for plaintiff's medical records.  At best, the logs plaintiff provides show that the

24   facility where he is incarcerated did not provide him with the subpoenas.  However, defendants

25
26      [7] Plaintiff also served this discovery untimely.  The court will for the same reasons as above, consider the merits of his motion nonetheless.

cannot be held responsible for whether the facility gave plaintiff the documents.  Additionally, even assuming plaintiff did not receive the original copies of the subpoenas, after plaintiff filed the initial motion, defendants sent him additional copies.  They also in good faith, and at their expense, sent plaintiff copies of the actual records themselves.  Defendants submit proof herein that these documents were properly addressed to plaintiff and sent via UPS in a mannner that required an individual from plaintiff's facility to sign for the documents, confirming their receipt.  (Doc. Nos. 65-1 & 68-1.)  Nothing more can be required of defendants.

Thus, for all of the above reasons, plaintiff's motions with respect to these requests are denied.

**d. Request for Admissions to Defendant DaBranca, Sets One**

At issue on the motion are Request Nos. 2, 4, 19, 20, 24 and 26.  As to Request No. 2, plaintiff's motion is without merit.  DaBranca answered the request which asked him to admit that when he "put a waist chain and handcuffs on Plaintiff that it was accomplished without the use of force."  (Haynes Decl., Ex. O [Doc. No. 57-3].)  DeBranca denied the request for admission and further explained that the denial was based on the fact that "plaintiff was not placed in a waist chain."  (Id. at Ex. P.)  There is nothing further to compel.

The same is true for Request No. 4, which similarly asked DaBranca to admit that when he placed plaintiff in leg restraints he did so without the use of force.  DaBranca denied the request, explaining further that plaintiff was not placed in leg restraints.  A further response is not required.

As to Request Nos. 19 and 20, DaBranca provided a partial denial.  Request No. 19 asked DaBranca to "admit that the pressure and movement [he] applied to [plaintiff's] head caused laceration, contusion, and abrasion to [plaintiff's] face, nose and ear."  (Id. at Ex. O.)  Request No. 20 asked DaBranca to admit that the injuries reflected in the photographs attached to the amended complaint occurred from the force DaBranca applied to petitioner in the secured garage of the jail.  (Id.)  DaBranca denied the requests to the extent it asked whether he applied

pressure to plaintiff's head; DaBranca stated that he believed plaintiff intentionally hit his own face on the door of the patrol car. DaBranca stated, however, that he lacked sufficient information or knowledge to identify the cause of plaintiff's injuries as he was not with plaintiff the entirety of the time at the jail and the photgraphs were taken hours after the initial contact between the two. Such partial responses are permitted by Federal Rule of Civil Procedure 36(a)(4) (allowing a party to qualify an answer or deny only a part of the matter, provided the party specify the part admitted and qualify or deny the rest).

Request No. 24 asked DaBranca to admit "that a deputy from the jail and a medical nurse and doctor Cassidy came out to the garage to assist [plaintiff] and examine [his] injuries." (Haynes Decl., Ex. O.) DaBranca has responded, admitting that both a deputy and Dr. Cassidy came to the garage to assist plaintiff. He stated, however, that he lacks sufficient information to admit or deny whether an additional nurse came to assist as well. DaBranca's response is sufficient.

Finally, as to Request No. 26, plaintiff asked DaBranca to admit "the incident in the secured garage constitutes a reason to engage the [video] recorder if in fact [the video] recording is not automatically occurring." (Id.) DaBranca responded that he lacks sufficient information to admit or deny the request. The request is objectionable; it is argumentative and/or calls for a legal conclusion. DaBranca is not required to respond any further.

**e. Request for Admissions to Defendant DaBranca, Set Two**

At issue are Request Nos. 1-4, 7-8, 10-13 and 16-25. The majority of these requests seek legal conclusions in violation of Federal Rule of Civil Procedure 36 and/or are objectionable because they seek to infringe upon the attorney-client privilege and/or work product privileges. For example, the following requests for admission call for legal conclusions, and defendant properly objected to the requests and did not answer:

> Request No. 1 – asking DaBranca to admit that the "unreasonable use of force claim against him is governed by the Fourth Amendment and Graham v. Connor (1989) 490 U.S. 386, 395"

Request No. 2 – asking DaBranca to admit that it is "the need for force which is at the heart of the (Graham) factors"

Request No. 3 – asking DaBranca to admit that "force is excessive when it is greater than is reasonable under the circumstances"

Request No. 4 – asking DaBranca to admit that "where some force is justified, the amount used may be excessive"

Request No. 7 – asking DaBranca to admit that "a four-point restrained arrestee in a secured garage of the Yuba County Jail poses no significant, immediate threat to the safety of officers or others (public)"

Request No. 10 – asking DaBranca to admit that "less than deadly force that may lead to serious injury may be used only when a strong governmental interest warrants its use and in such circumstances, should be preceded by a warning"

Request No. 13 – asking DaBranca to admit that "a laceration which would require stitches to repair does not meet the criteria of 'great bodily injury' under California state law"

Request No. 18 – asking DaBranca to admit that "in assessing the credibility of officer's account, fact-finders may consider evidence that the officer may have harbored ill-will toward the citizen"

Request No. 19 – asking DaBranca to admit that although a plaintiff is not required to show that force used against him/her was applied maliciously and sadistically for the very purpose of causing harm, it should not be a reach to believe that a Defendant's actions may have indeed been application of unreasonable force maliciously and sadistically applied for the very purpose of causing harm where Petitioner/Plaintiff had instigated/provoked violence with profanity directed at defendant"

Request No. 20 – asking DaBranca to admit that "there must be objective factors to justify a probable cause to believe that plaintiff posed a significant threat of death or serious physical injury to officers or others to use reasonable force to alleviate that threat; that a simple statement by an officer that he feared for his safety or the safety of other is not enough. (McGargee v. Wittman, 550 F. Supp. 2d 1190)"

Request No. 21 – asking DaBranca to admit that "when an officer makes a lawful arrest but uses excessive force in making that aarrest, the citizen being arrested has a right to resist the unlawful use of force, and if the citizen receives a beating due to his resistence to the unlawful use of force, the officer is liable for damages to the citizen. (Hausman v. Tredinnick (1977) 432 F. Supp. 1160 )"

Request No. 22 – asking DaBranca to admit that "an officer's infliction of injury on an arrestee as punishment that exceeds that which is reasonable and necessary under the circumstances violates standards of decency more or less universally accepted and amounts to cruel and unusual punishment. (Pennsylvania v. Porter (1979) 480 F. Supp. 686)."

19

Request No. 23 – asking DaBranca to admit that "an arrestee's right to be free from excessive use of force and serious injury while four-point restrained in a secured garage where the officer is not threatened with serious injury or death by the arrestee or other citizens is a clearly established right"

Request No. 24 – asking DaBranca to admit that "punitive damages are warranted where a plaintiff can show: (1) that the officer's actions caused injury to Plaintiff, (2) that the actions were grossly disproportionate to the need for the use of force under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal, so that it amounts to abuse of official power that shocks the conscience"

Request No. 25 – asking DaBranca to admit that where no use of force was applied at scene to effect arrest and application of four-point restraints, that later use of force out of the public eye in a secured garage with an underlying offense is a misdemeanor public intoxication where Petitioner had repeatedly used language to instigate and provoke officer is suspect as to the need for the use of force that inflicted great bodily injury"

(Haynes Decl., Ex. O.)

Rule 36(a)(1)(A) provides that a request for admission must relate to "facts, the application of law to fact, or opinions about either." The above requests do not reference the facts of this case. Instead, they ask defendant to admit various legal propositions, conceding the elements of a claim or affirming certain legal standards. These are not proper subjects of a request for admission. Moreover, in large part, the requests also improperly seek information protected from disclosure by the attorney client or work product privileges. In many respects for DaBranca, a non-lawyer, to admit or deny the requests he would need to consult his attorney and then respond based on his counsel's advice. Such disclosures are not required, however, as DaBranca's communications with his counsel are protected. DaBranca properly objected to these requests and did not answer.

The remaining at-issue requests are as follows: In Request No. 8 plaintiff asked DaBranca to admit that at no time did plaintiff attempt to evade arrest by flight. DaBranca responded that he lacked sufficient information to admit or deny this request. Such response was appropriate as DaBranca explained that he did not know what plaintiff was attempting to

/////

1  accomplish when he resisted and refused to comply with the officers' commands.  No further

2  response is required.

3          As to Request No. 11, plaintiff asked DaBranca to admit that a laceration is a cut

4  through the skin.  Defendant properly objected on the grounds that the request is vague and

5  ambiguous and/or calls for an expert opinion.  He was not required to respond.

6          As to Request No. 12, plaintiff asked DaBranca to admit that the medical records

7  disclosed by DaBranca relating to plaintiff's injuries state that the laceration needed repair by

8  stitches.  DaBranca *denied* this request; there is nothing to compel.  (Haynes Decl., Ex. Q.)

9          As to Request No. 16, plaintiff asked DaBranca to admit that had plaintiff struck

10  or battered DaBranca that DaBranca would have been compelled by duty and protocol to charge

11  plaintiff with criminal assault on a peace officer or battery on a peace officer.  DaBranca also

12  *denied* this request; there is nothing to compel.  (Id.)

13          Finally, as to Request No. 17, plaintiff asked DaBranca to admit that it is not the

14  policy of the Yuba County Sheriff's Department to ignore or excuse, without criminal

15  prosecution, any criminal threat to assault or batter a peace officer/sherrif's deputy.  DaBranca

16  responded that he could not answer the request because the Yuba County Sheriff's Department

17  does not have a policy on that issue; decisions regarding criminal prosecutions are not made by

18  the department.  DaBranca's response was sufficient.

19                                        **CONCLUSION**

20          For all of the reasons set forth above, IT IS HEREBY ORDERED:

21      1.   Plaintiff's motion to compel further production of documents from defendants
            (Doc. No. 48) is denied;

22

23      2.   Defendants' motion to compel plaintiff's further deposition is granted (Doc. No.
            51); defendants' request for sanctions is denied (Doc. No. 51); and plaintiff's
            motion to strike portions of defendants' reply is denied (Doc. No. 56);

24

25      3.   Plaintiff's motion to compel further production of documents and responses to
            requests for admissions from defendants is denied (Doc. No. 55); plaintiff's
            motion for leave to submit an addendum and declaration is denied (Doc. No. 64);

26  /////

1        4.       Plaintiff's motion for a pretrial conference via video conferencing is denied (Doc.
                   No. 59); and

2

3        5.       Relating to the final motion, discovery in this case is extended to May 25, 2012
                   and the parties may file dispositive motions on or before August 31, 2012.

4    DATED: March 9, 2012.

5

6    _____

7    DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

8

9    DAD10
    Ddad1\prisoners-civil rights\holston.09.2954.mtnscompel.order

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26